## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**SIDNEY EDWARD HUDDLESTON III,**

      **Movant,**

v.                                **Civil Action No. 3:11-cv-00403**
                                       **(Criminal No. 3:10-cr-00042)**

**UNITED STATES OF AMERICA,**

      **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF No. 94), Movant's Application to Proceed Without Prepayment of Fees and Costs, (ECF No. 93), and Respondent's Motion to Dismiss. (ECF No. 101). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that Movant's Motion be denied, that Respondent's Motion to Dismiss be granted, and that this matter be dismissed, with prejudice, and removed from the docket of the Court. Given that the undersigned conclusively **FINDS** that Movant is not entitled to the relief requested, an evidentiary hearing is not warranted. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

1

## I.    **Background**

On January 16, 2009, the Mason County Sheriff's Department obtained a state search warrant for Sidney Edward Huddleston III's ("Huddleston") residence in Apple Grove, WV, based upon information provided by a confidential informant. (ECF No. 80 at 15-16). During the search, the police recovered 27 firearms, including pistols, shotguns, and rifles. (ECF No. 56 at 10-11). Deputy Marshal William Seckman of the United States Marshals Service confirmed that the firearms had traveled in interstate commerce prior to being possessed by Huddleston. (ECF No. 80 at 17).

A year later, on January 25, 2010, a task force comprised of members of the United States Marshals Service, the Mason County Sheriff's Department, and the West Virginia State Troopers returned to Huddleston's residence as part of a sex-offender compliance sweep. (*Id.* at 17-18). During the sweep, they observed a firearm in an outbuilding on Huddleston's property. (ECF No. 56 at 12). An incidental search of Huddleston's residence uncovered numerous additional firearms in his possession. (*Id.*). Deputy Marshal Seckman confirmed that those firearms had also traveled in interstate commerce prior to being possessed by Huddleston. (ECF No. 80 at 18).

## II.    **Procedural History**

On January 28, 2010, a federal complaint was filed charging Huddleston with being a felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (ECF No. 1). That same day, a federal warrant was issued for Huddleston's arrest. (ECF No. 2). On March 3, 2010, a federal grand jury in Charleston returned a three-count indictment and forfeiture against Huddleston. (ECF No. 18). Counts 1 and 3 of the indictment charged Huddleston with being a felon in possession of firearms (18 U.S.C. §§ 922(g)(1) and 924(a)(2)), stemming from the January 2009 and January 2010

searches, respectively. (*Id.* at 3, 6). Count 2 charged Huddleston with knowingly possessing a firearm with an obliterated serial number (18 U.S.C. §§ 922(k) and 924(a)), from the January 2009 search. (*Id.* at 4).

On July 14, 2010, Huddleston executed a written agreement with the Government in which he agreed to enter a guilty plea to the first count of the indictment in exchange for dismissal of the other two counts against him. (ECF No. 56). Huddleston's plea agreement contained express waivers of his right to appeal and collaterally attack his guilty plea, conviction, and sentence. (*Id.* at 7-8). Specifically, Huddleston agreed to waive both his right to "appellate review of any sentence of imprisonment or fine imposed by the District Court, or the manner in which the sentence was determined, on any other ground whatsoever including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment or fine is below or within the Sentencing Guideline range corresponding to offense level 29," as well as his right to "challenge his guilty plea and his conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255," aside from claims based upon ineffective assistance of counsel. (*Id.*)

On August 9, 2010, the District Court conducted Huddleston's plea hearing. At the hearing, the Court engaged Huddleston in a thorough Rule 11 colloquy. (ECF No. 80). The Court established Huddleston's competence to enter a guilty plea and his satisfaction with the adequacy of his legal representation. (*Id.* at 4–5). The Court verified that Huddleston understood the plea agreement and appreciated that the stipulation of facts attached to the agreement could be used against him for plea and sentencing purposes. (*Id.* at 9). The Court read and explained the contents of the

indictment to Huddleston and reviewed the factual basis for his guilty plea by asking Huddleston to state in his own words what he had done that made him guilty of the possession of firearms charge. (*Id.* at 10–13). Huddleston testified that he had possessed the firearms in his home in Apple Grove, WV, that the firearms "were literally [his] guns," and that he had previously been convicted of the underlying felonies listed in the indictment. (*Id.* at 13). Huddleston's attorney later clarified that Huddleston did not personally own all of the firearms recovered, but nevertheless he admitted to possessing them. (*Id.* at 28). The District Court explained to Huddleston that if he admitted to controlling and possessing firearms that belonged to others, he would still be guilty of committing a crime, and each of the firearms would be added to the total number of firearms possessed for the purpose of determining his sentencing guideline range. (ECF No. 80 at 28). Huddleston acknowledged that he understood the consequences of admitting to possession of all of the firearms. (*Id.*).

At the plea hearing, the Government presented the testimony of Deputy Marshal William Seckman who investigated and arrested Huddleston in conjunction with the West Virginia State Police, the Mason County Sheriff's Department, and the Bureau of Alcohol, Tobacco, Firearms and Explosives. (*Id.* at 13-18). Deputy Marshal Seckman testified that on January 16, 2009, the Mason County Sheriff's Department searched Huddleston's residence pursuant to a state search warrant based upon information provided by a confidential informant. (*Id.* at 15-16). There, they found multiple firearms, including pistols, shotguns, and rifles. (*Id.* at 16). Deputy Marshal Seckman indicated that the firearms had traveled in interstate commerce prior to being possessed by Huddleston. (*Id.* at 17).

Accordingly to Deputy Marshal Seckman, on January 25, 2010, he and other law enforcement officers returned to Huddleston's residence as part of a sex offender compliance sweep and, while there, discovered additional firearms in Huddleston's possession. (ECF No. 80 at 18). Deputy Marshal Seckman confirmed that these firearms likewise had traveled in interstate commerce prior to being possessed by Huddleston. (*Id.*). Deputy Marshal Seckman testified that Huddleston had previously been convicted of delivery of a controlled substance; a third offense DUI; possession of an unregistered firearm, and aiding and abetting. (*Id.* at 15). Each offense was punishable by imprisonment for a term exceeding one year. (*Id.*). Deputy Marshal Seckman further indicated that Huddleston's right to possess a firearm had never been restored. (*Id.*). At the conclusion of the testimony, the Court asked Huddleston if Deputy Marshal Seckman's testimony was substantially correct, to which Huddleston answered that it was. (*Id.* at 19).

The Court then explained the consequences of Huddleston's guilty plea. (ECF No. 80 at 19–27). The Court discussed Huddleston's potential loss of civil rights, sentencing exposure, terms of supervised release, and potential monetary penalties. (*Id.* at 19-21). The Court reviewed the provision of the plea agreement in which Huddleston agreed to forfeit to the United States "all of the firearms and ammunitions owned by [Huddleston] or over which [he] had control, including but not limited to all the firearms listed in the plea agreement in *[sic]* the indictment." (*Id.* at 21). The Court went over the sentencing guidelines, their applicability to Huddleston's case, the unavailability of parole, and the binding nature of the guilty plea. (*Id.* at 21-23). Specifically, the Court asked Huddleston if he understood that he had agreed to offense level adjustments under the sentencing guidelines for both "the number of firearms and the fact that some had an obliterated

serial number." (*Id.* at 23). Huddleston responded affirmatively. (*Id.*).

Continuing with the plea colloquy, the Court reviewed the terms of Huddleston's plea agreement concerning Huddleston's waiver of appellate and collateral attack rights. (ECF No. 80 at 23-25). The Court advised Huddleston of his right to appeal the conviction based upon an unlawful or involuntary guilty plea or other fundamental defect in the proceedings that Huddleston had not waived by pleading guilty. (*Id.* at 23-24). Huddleston acknowledged that he agreed to waive his right to appeal "any sentence of imprisonment or fine imposed or the manner in which the sentence was determined on any ground, except for a claim based on ineffective assistance of counsel" so long as his sentence fell within or below the guideline range for an offense level of 29. (*Id.* at 24). Huddleston also conceded that he agreed to waive his right to collaterally attack his guilty plea, the conviction resulting from his plea agreement, and the sentence, aside from claims based upon ineffective assistance of counsel. (*Id.* at 25). Huddleston understood that both waivers were generally enforceable, and that he would have to challenge the validity of the waivers in order to obtain appellate review of an issue he waived. (*Id.* at 24-25). The Court also discussed the constitutional and other legal rights Huddleston would give up if he chose to plead guilty. (*Id.* at 25-27).

Finally, the Court questioned Huddleston regarding the voluntary nature of his guilty plea. (ECF No. 80 at 27-28). Huddleston verified that no one had forced, threatened, or talked him into pleading guilty against his will. (*Id.* at 27). He confirmed that in entering his guilty plea, he was acting voluntarily and of his own free will, and that pleading guilty was his own idea. (*Id.*). Huddleston denied that anyone had promised him anything or told him something different than what had been discussed at the plea hearing in order to get him to plead guilty. (*Id.* at 27-28). Consequently, the

District Court found Huddleston's guilty plea to be voluntary. (*Id.* at 28). When expressly asked, Huddleston denied having any questions or second thoughts about pleading guilty. (*Id.*). In conclusion, the District Court stated, "I find Mr. Huddleston is fully competent and capable of entering an informed plea, there's a sufficient factual basis, he understand *[sic]* the nature of the charge and the consequences of pleading guilty, he understands the rights he's giving up by pleading guilty, and his plea is voluntary." (ECF No. 80 at 29). The Court accepted Huddleston's plea and adjudged him guilty of the possession charge. (*Id.* at 28). The Court deferred acceptance of the plea agreement pending completion of a Presentence Investigation Report (PSR), and scheduled sentencing for November 8, 2010. (*Id.* at 29-30).

A PSR was prepared prior to sentencing, which reviewed the charge and Huddleston's conviction, the plea agreement and stipulation, the offense conduct, and the facts surrounding Huddleston's arrest. (ECF No. 69). Huddleston's base offense level was calculated to be 20. (*Id.* at 7). A six-level firearm enhancement was added under U.S.S.G. § 2K2.1(b)(1)(C) (offense involving 25-99 firearms) because the offense involved 27 firearms. (*Id.* at 7). Likewise, a four-level firearm enhancement was added under U.S.S.G. § 2K2.1(b)(4)(B) (firearm with an altered or obliterated serial number) because one of the firearms in Huddleston's possession, a Taurus, model .38 Special, .38 caliber pistol, had an obliterated serial number. (*Id.*). Because U.S.S.G. § 2K2.1(b) does not permit the cumulative offense level determined from application of §§ (b)(1) and (b)(4) to exceed 29, Huddleston's offense level was therefore calculated to be 29, rather than 30. (*Id.*). The Probation Officer recommended a three-level decrease for Huddleston's acceptance of responsibility, resulting in an adjusted offense level of 26. (*Id.* at 8).

Huddleston's history of criminal convictions yielded a criminal history score of seven, which resulted in a criminal history category of III. (ECF No. 69 at 10). Based on a total offense level of 26 and a criminal history category of III, Huddleston's guideline range of imprisonment was 78-97 months. (*Id.* at 13). Huddleston raised one objection to the final PSR, denying the truth or accuracy of paragraphs 11 and 12 of the presentence report. (*Id.* at 16). Paragraphs 11 and 12 stated that (i) in the course of both searches at Huddleston's residence, law enforcement officers discovered a number of controlled substances including methamphetamine, marijuana and oxycodone; (ii) during the January 2009 search, officers also found a digital scale, $4,800, and a firearm with an obliterated serial number, and (iii) during the January 2010 search, Huddleston admitted to selling the drugs and possessing the weapons. (*Id.* at 4). In response to these objections, the probation officer declined to omit Paragraphs 11 and 12, indicating that their contents were based upon police reports and were relevant "to inform the court of the entire circumstances." (*Id.* at 16).

Sentencing took place on November 5, 2010. (ECF No. 81). Huddleston appeared in person and with counsel. The District Court began by confirming that Huddleston had read the PSR and reviewed it with his attorney. (*Id.* at 3-4). After establishing that Huddleston understood the contents of the PSR, the Court addressed Huddleston's objection to the report. (*Id.* at 4–12). Huddleston reiterated his objection to paragraphs 11 and 12, arguing that they did not describe conduct relevant to any sentencing enhancements, that they were inaccurate with respect to alleged discovery of methamphetamines, and that they contravened the plea agreement because part of the negotiations involved the fact that defense had filed two motions to suppress evidence relating to the searches. (*Id.* at 4-7). The Court noted that paragraphs 11 and 12 were not

submitted for the purpose of affecting the offense levels or sentencing guideline range, and that under U.S.S.G. § 1B1.4, accurate information may be included in the presentence report and relied upon to determine a sentence within a guideline range or to support a departure. (*Id.* at 8). The Court proceeded to inquire into the substances and quantities of drugs discovered during each search, to which the Government responded with several exhibits. (*Id.* at 9-13). The Court ultimately denied Huddleston's objection based on forensic laboratory reports showing that a substantial number of different controlled substances were seized from Huddleston's residence during both searches, and some of the substances tested positive for methamphetamine. (ECF No. 81at 13-14). Moreover, Huddleston had made a statement to the police in which he admitted to possessing controlled substances for the purpose of selling them and even provided a list of the prices he charged for marijuana, oxycodone, and other pills. (*Id.* at 14-15). The Court noted that while Huddleston did not explicitly admit to manufacturing or selling methamphetamine, the Government's evidence sufficed to support the factual content of paragraphs 11 and 12. (*Id.* at 15). The Court then adopted the presentence report and accepted the plea agreement. (*Id.* at 16).

The Court confirmed that Huddleston's offense level of 26 and criminal history category of III would yield a guideline range of imprisonment for 78 to 97 months. (*Id.* at 17). Huddleston's counsel subsequently argued for a downward variance based upon Huddleston's advanced age of 63 years, his history of two heart attacks, and exigent family circumstances. (*Id.* at 17-19). The Government opposed a downward departure emphasizing Huddleston's prominence as "one of the main drug distributors of Mason County," as well as his extensive criminal history. (ECF No. 81 at 20). Huddleston's counsel objected to the Government's characterization of Huddleston as "the so-called

king of Apple Grove, West Virginia, in terms of drug transactions;" particularly, as he was not charged with any drug trafficking offenses. (*Id.* at 22). Counsel also stressed that the firearms found at Huddleston's residence were not the type usually associated with drug trafficking crimes; instead, they were used primarily for recreational and sporting purposes. Counsel then offered a statement from Mr. Huddleston in which he accepted responsibility for possessing the firearms, but claimed that he had not known that his possession of hunting rifles and recreational firearms was unlawful. (*Id.* at 21-24). The Court denied Huddleston's motion for a downward departure or variance based upon the evidence that Huddleston had been selling drugs[1] and that Huddleston knew or should have known that firearms possession was unlawful. (*Id.* at 25-26). In declining to grant a downward variance, the District Court stated,

> What really disturbs me is that in January of '09 you got searched and arrested for having a bunch of guns and a bunch of drugs, and a year later you're doing exactly the same thing again. And it just strikes me as bizarre to think that if you really cared this much about your family and about your wife and your son's well-being, that you would put yourself in a position of having been arrested in January of 2009 for a bunch of guns and drugs, that you would repeat that conduct within a year while those charges were unresolved. That shows I think a staggering disrespect for the law and for your family because what you did is really what put them at risk.
>
> If you hadn't been engaged in all that conduct and this was just charges based on in January of '09 you having a bunch of hunting weapons but no indication of drugs or none of that and you hadn't repeated it a year later, I probably would look hard at a way to keep you from going to prison so that your family wouldn't suffer. But I just can't justify allowing you to have a relaxed sentence when I see conduct like this.

(*Id.* at 25-26). The Court then sentenced Huddleston to a term of imprisonment of 78 months. (*Id.* at 27).

---

[1] The Court relied on the forensics reports and Huddleston's own admissions, but specifically discounted the Government's claim that Huddleston was "the biggest drug dealer in Mason County." (ECF No. 81 at 25).

On November 18, 2010, Huddleston filed a Notice of Appeal with the United States Court of Appeals for the Fourth Circuit. (ECF No. 74). On March 15, 2011, the Fourth Circuit dismissed Huddleston's appeal on the ground that "Huddleston knowingly and voluntarily waived his right to appeal and that the issue he seeks to raise on appeal falls within the compass of that waiver." (ECF No. 85 at 1-2). On June 8, 2011, Huddleston filed the instant § 2255 Motion. (ECF No. 94).

### III.   Movant's Grounds for Vacating, Setting Aside, or Correcting His Sentence.

Huddleston raises many grounds in support of his Motion to Vacate, which the undersigned has grouped into four main categories:

1. Counsel rendered ineffective assistance prior to the guilty plea by failing to raise a number of objections.

2. Huddleston's guilty plea was not made knowingly and voluntarily.

3. Counsel rendered ineffective assistance at sentencing by failing to object to the sentencing enhancements.

4. Conviction was improper due to entrapment and prosecutorial misconduct.

### IV.   § 2255 Standard

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence imposed in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. Because a § 2255 motion seeks to deny, evade, or impeach a judgment, claims of error that have previously been raised and rejected on a direct appeal of the judgment may not be raised again in a §

11

2255 motion. *United States v. Harrison*, No. 96-7579, 1997 WL 499671, at *1 (4th Cir. Aug. 25, 1997) (unpublished).

Nonetheless, a § 2255 motion is not an alternative to filing a direct appeal. *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Nonconstitutional claims that *could* have been raised on direct appeal, but were not, may not be asserted in collateral proceedings. *Stone v. Powell*, 428 U.S. 465, 477, n.10, 96 S.Ct. 3037, 49 L.Ed2d 1067 (1976) (citing *Davis v. United States*, 417 U.S. 333, 345-346 and n. 15 (1974); *Sunal v. Large*, 332 U.S. 174, 178–79 (1947)); *see also United States v. Linder*, 552 F.3d 391, 396–97 (4th Cir. 2009) ("A petitioner who waives the right to appeal is not precluded from filing a petition for collateral review. But he is precluded from raising claims that are the sort that *could have* been raised on appeal.") (quoting Brian R. Means, *Fed. Habeas Practitioner Guide,* Jurisdiction ¶ 1.23.0 (2006/2007)) (emphasis in the original) (internal citations omitted). Nonconstitutional claims that *could not* have been asserted on direct appeal may be raised in a § 2255 motion only if the alleged error constituted "a fundamental defect which inherently results in a complete miscarriage of justice" *Stone*, 428 U.S. at 477 n.10 (quoting *Davis*, 417 U.S. at 346; *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)) or is "inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979).

Similarly, a constitutional error that could have been, but was not raised on appeal may not be raised for the first time in a § 2255 motion, unless the movant can show either (1) "cause" that excuses the failure to raise the error on appeal and "actual prejudice" resulting from the error, or (2) that a miscarriage of justice would occur if the court refuses to entertain the collateral attack. *Massaro v. United States*, 538 U.S. 500,

504, 123 S.Ct. 1690, 155 L.Ed. 2d 714 (2003) (citing *Bousley v. United States*, 523 U.S. 614, 621–22, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)); *Frady,* 456 U.S. *at* 167–68; *United States v. Mikalajunas,* 186 F.3d 490, 492–93 (4th Cir. 1999). To establish "actual prejudice," the movant must show that the alleged error resulted in an "actual and substantial disadvantage," rather than a mere possibility of prejudice. *Satcher v. Pruett,* 126 F.3d 561, 572 (4th Cir. 1997) (quoting *Murray v. Carrier,* 477 U.S. 478, 494, 106 S.Ct. 2639, 2648 (1986)). To demonstrate a miscarriage of justice, the movant must prove "actual innocence" of the crime for which he was convicted, substantiating that "it is more likely than not, in light of all the evidence, that no reasonable juror would have convicted him." *Bousley,* 523 U.S. at 621.

## V. <u>Analysis</u>

### A. **Ineffective Assistance Prior to Plea Agreement**

Huddleston raises several objections relating to counsel's performance prior to the plea agreement. Broadly speaking, Huddleston argues that counsel rendered ineffective assistance by 1) failing to object to the indictment, 2) failing to investigate and pursue Fourth Amendment violations relating to the 2009 Search, and 3) failing to investigate and pursue Fourth and Fifth Amendment violations relating to the 2010 Search.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the effective assistance of counsel during their criminal proceedings, a right which extends to the plea-bargaining process. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Lafler v. Cooper*, _ U.S. _, u132 S. Ct. 1376, 1384, 182 L.Ed.2d 398 (2012) (internal quotation marks omitted). However, "[i]t is well-established that a voluntary and intelligent guilty

plea forecloses federal collateral review of allegations of antecedent constitutional deprivations." *Fields v. Att'y Gen. of Maryland,* 956 F.2d 1290, 1294 (4th Cir. 1992); *see also Tollett v. Henderson,* 411 U.S. 258, 266, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). A voluntary and intelligent guilty plea amounts to an admission of the material elements of the charged crime, *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); consequently, it generally constitutes a waiver of *all claims* relating to non-jurisdictional errors that occurred prior to the plea. *United States v. Partlow,* 301 Fed.Appx. 297, 298 (4th Cir. 2008) (citing *Tollett,* 411 U.S. at 267); *see also United States v. McCleary,* No. 95-6922, 1997 WL 215525 (4th Cir. May 1, 1997) (unpublished). "Thus where a defendant does not challenge the jurisdiction of the court's 'power to enter the conviction or impose the sentence,' 'the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.'" *United States. v. Fabian,* 798 F.Supp.2d 647, 669 (D. Md. 2011) (quoting *United States v. Broce,* 488 U.S. at 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)). When examining an ineffective assistance of counsel claim in the face of a guilty plea, the "focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea not the existence as such of an antecedent constitutional infirmity." *Tollett,* 411 U.S. at 266; *See also Fields,* 956 F.2d at 1297 n.17 (the "[c]onduct of counsel occurring prior to entry to a guilty plea may be examined in evaluating the extent to which the prior representation influenced the voluntary and intelligent character of the guilty plea entered").

While assistance "which is ineffective in preserving fairness does not meet the constitutional mandate," *Strickland,* 466 U.S. at 685-86, "defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2001). In

*Strickland*, the Supreme Court adopted a two-prong test to determine whether a criminal defendant received ineffective assistance of counsel. A defendant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-91. In the context of a guilty plea, the "performance" prong of the *Strickland* standard is the same: whether counsel's representation fell below an objective standard of reasonableness. *Hill v. Lockhart*, 474 U.S. 52, 58–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). To establish the "prejudice" prong, the movant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Fabian*, 798 F.Supp.2d at 670; *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). "[J]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Hence, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The inquiry under *Strickland* is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter,* _ U.S. _. 131 S.Ct. 770, 778 , 178 L.Ed.2d 624 (2011).

### 1. *Failure to Object to the Indictment*

Huddleston argues that counsel provided ineffective assistance by failing to make a motion under Fed. R. Crim. P. 12(b)(3)(B) alleging the presence of defects in the indictment. (ECF No. 94 at 13). In support of this argument, Huddleston identifies three

alleged deficiencies in the indictment,[2] which he contends counsel should have raised prior to the plea agreement: 1) the charges were misjoined; 2) the indictment was "stale;" and 3) the indictment failed to establish that Huddleston possessed the *mens rea* necessary to support the offenses charged. (*Id.* at 11-12, 29). The undersigned will address each objection in turn.

First, Huddleston argues that the indictment was defective due to misjoinder of the charges. (*Id.* at 29). According to Huddleston, it was improper for the Government to join charges that resulted from two separate searches, which occurred "a full year apart from each other."[3] (*Id.*). This argument lacks merit, as "joinder is the rule rather than the exception," particularly when the defendant is charged with multiple violations of the same statute. *United States v. Hawkins*, 589 F.3d 694, 700 (4th Cir. 2009) (citations and internal quotations omitted); *see also United States v. Acker*, 52 F.3d 509, 514 (4th Cir. 1995) ("Trial courts routinely allow joinder of different bank robbery counts against a single defendant in the same indictment."). Here, the first and third charges in Huddleston's indictment were for possessing firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), while the second charge, for possessing a firearm with an obliterated serial number, arose out of the same search resulting in the first charge. (ECF No. 18). Thus, the joinder of Huddleston's charges was proper and would

---

[2] Huddleston alleges a fourth deficiency in counsel's representation related to the indictment's reference to an obliterated serial number. (ECF No. 94 at 11, 13). Because the obliterated serial number formed the basis of a sentence enhancement, rather than the crime of conviction, this issue is more aptly addressed below, in the section regarding Huddleston's sentencing. *See infra* Part V.C.1.

[3] With regard to the 2009 search, Huddleston also argues that counsel failed to raise a Speedy Trial objection. (ECF No. 94 at 29). The Fourth Circuit has recently rejected Speedy Trial objections under both the Speedy Trial Act, 18 U.S.C. § 3161 et seq., and the Sixth Amendment where a defendant was indicted on federal charges more than a year after authorities executed a search warrant at his residence. *United States v. Burgess*, 684 F.3d 445, 450-52 (4th Cir. 2012). Therefore, counsel's representation was not deficient for failing to raise a Speedy Trial defense.

not have provided a legitimate basis upon which to challenge the indictment

Second, Huddleston argues that the indictment was "stale."[4] (ECF No. 94 at 11). Huddleston states that "[t]he complaint was filed January 28, 2010, and the Indictment followed on March, 3, 2010, which was a full 34 days after the complaint was served on Mr. Huddleston." (*Id.* at 12). Accordingly, Huddleston contends that the government violated the 30-day time limit imposed by 18 U.S.C. § 3161. (*Id.*). Huddleston misreads the statute, which states in relevant part that, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed *within thirty days from the date on which such individual was arrested* or served with a summons in connection with such charges." 18 U.S.C. § 3161(b) (emphasis added). Although the complaint was filed January 28, 2010, (ECF No. 1), Huddleston was not arrested until February 2, 2010. (ECF No. 10). Because the indictment was filed March 3, 2010 (ECF No. 18), 29 days after Huddleston's arrest, it did not violate 18 U.S.C. § 3161. Therefore, the indictment was not stale.

Finally, Huddleston alleges that the indictment was flawed because it did not contain all essential elements of the crime charged, as required by *U.S. v. Debrow*, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953). (ECF No. 94 at 12). According to Huddleston, "the *mens rea* element of committing a crime did not exist" because "he did not know he was committing a crime." (*Id.*). Rather, Huddleston asserts that he sincerely believed he had a right to possess the firearms. (*Id.* at 33-34). Huddleston's argument fails for two reasons. First, the essential elements of an offense under 18 U.S.C. § 922(g)(1) are:

---

[4] Huddleston also argues that to the extent the indictment was stale, "the indictment lacked subject matter jurisdiction." (ECF No. 94 at 13). However, it is clear that the District Court properly exercised subject matter jurisdiction over Huddleston's criminal proceedings. *See* 18 U.S.C. § 3231. ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.").

> (1) the defendant previously had been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) the defendant knowingly possessed, transported, shipped, or received, the firearm; and (3) the possession was in or affecting commerce, because the firearm had traveled in interstate or foreign commerce at some point during its existence.

*United States v. Gilbert*, 430 F.3d 215, 218 (4th Cir. 2005) (quoting *United States v. Langley*, 62 F.3d 602, 606 (4th Cir. 1995)). The indictment in Huddleston's case contained all essential elements of the crime charged. For both felon-in-possession charges, the indictment alleged that Huddleston "had been convicted of crimes, each of which was punishable by imprisonment for a term exceeding one year, as defined in 18 U.S.C. § 921(a)(20)" at the time of possessing the firearms, and listed three qualifying underlying crimes. (ECF No. 18 at 2-3, 5-6). For both charges, the indictment also alleged that Huddleston "did knowingly possess the following firearms in and affecting interstate commerce," and listed the respective firearms discovered. (*Id.* at 1-2, 5). Second, the Fourth Circuit has conclusively rejected the line of reasoning that Huddleston uses to argue that he lacked the requisite *mens rea:*

> Since § 924(a)(2) provides for punishment only where a defendant "*knowingly* violates" § 922(g)(1), knowledge of possession is necessary for conviction. In applying the mens rea of knowledge, Congress specifically declined to require the showing of willfulness necessary to punish violations of certain other subsections of § 922. Unlike a mens rea of willfulness, which generally requires a "bad purpose," the mens rea of knowledge in most contexts merely requires proof of knowledge of the facts that constitute the offense.

*Gilbert*, 430 F.3d at 218-19 (internal marks omitted); *see also Langley*, 62 F.3d at 605-06 (4th Cir. 1995). Thus, the indictment did not fail for lack of all essential elements because it properly alleged that Huddleston knowingly possessed firearms. Huddleston's "sincere belief" in the legality of his possession of firearms does not negate the requisite *mens rea* for the offense.

The law is well-settled that the failure of defense counsel to make a frivolous motion cannot support a claim of ineffective assistance of counsel. *See United States v. Cronic*, 466 U.S. 648, 657, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Moody v. Polk,* 408 F.3d 141, 151 (4th Cir. 2005). Accordingly, the undersigned **FINDS** that Huddleston's counsel did not render ineffective assistance by failing to raise frivolous objections to the indictment.

### 2.    *Failure to Object to the 2009 Search*

Huddleston next argues that counsel rendered ineffective assistance by failing to object to two deficiencies related to the January 2009 search warrant. (ECF No. 94 at 19, 30). According to Huddleston, counsel only conducted a "cursory investigation" of the confidential informant's non-credible report regarding Huddleston's alleged "drug marketing" and should have objected to the 2009 search warrant as flawed because it improperly referenced marijuana. (*Id.* at 19, 33).

Turning first to Huddleston's claim regarding the confidential informant, the undersigned notes that Huddleston's first attorney, Christian M. Capece, filed a Motion to Suppress the evidence found during the January 2009 search.[5] (ECF No. 39). The Motion alleged that the search warrant affidavit was "inadequate on its face in that there was no information included that established the reliability of the informant nor was there any information included that demonstrated any efforts by the deputy who submitted the application to corroborate the information provided by the informant." (*Id.* at 2). Shortly thereafter, Attorney Dana Eddy replaced Capece as Huddleston's trial counsel. (ECF Nos. 42 and 43). Prior to a ruling on the pending suppression motion,

---

[5] Attorney Capece also filed a concurrent motion to suppress evidence found in the January 2010 search. (ECF No. 40).

Huddleston signed a plea agreement in which he pled guilty to possessing firearms found in the January 2009 search. (ECF No. 56 at 1-2). Although the suppression motion was not formally addressed by the court, the record suggests that Huddleston's counsel used it as a bargaining chip in negotiating a favorable plea agreement for Huddleston.[6] Huddleston seems to argue now that counsel should have investigated the confidential informant's statements about Huddleston's alleged "drug marketing" and pursued the suppression motion, rather than allowing him to accept a plea bargain. (ECF No. 94 at 19).

A movant who alleges ineffective assistance of counsel after entering a guilty plea has a high burden to meet. *Hill v. Lockhart*, 474 U.S. 52, 53 (1985). Strict adherence to the deferential *Strickland* standard is "all the more essential when reviewing the choices an attorney made at the plea bargain stage" because "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks[.]" *Premo v. Moore*, _ U.S. _, 131 S.Ct. 733, 741, 178 L.Ed.2d 649 (2011). "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *see also Bone v. Polk*, 774 Fed. Appx. 193, 198 (4th Cir. 2011). "A defendant who accepts a plea bargain on counsel's advice does not necessarily suffer prejudice when his counsel fails to seek suppression of

---

[6] At the sentencing hearing, counsel stated "in this case we negotiated a plea agreement, and part of that negotiation involved the fact that there were two motions to suppress that had been filed in this case with respect to both the seizure of weapons in 2009 and the seizure of weapons in 2010." (ECF No. 80 at 5).

evidence, even if it would be reversible error for the court to admit that evidence." *Premo*, 131 S.Ct. at 744. The lack of a formal record or history of how the charges played out at trial "works against the party alleging inadequate assistance." *Id.* at 745.

In this case, the record reflects that Huddleston knew at the time he signed the plea agreement that his guilty plea would act as a waiver of his right to contest the validity of the search warrant, yet he chose to plead guilty. (ECF No. 56 at 4, 9). Moreover, at the plea hearing, the District Court reminded Huddleston that his entry of a guilty plea would "waive any defense to this criminal action," and Huddleston confirmed his understanding. (ECF No. 80 at 21). Accordingly, Huddleston made an intelligent decision about whether or not to fight the charges against him and his *post facto* contention that counsel should have pursued the suppression motion is frivolous.

In any event, Huddleston offers no facts or argument upon which to conclude that his suppression motion would have been successful. Huddleston claims that the warrant was invalid largely because it was based upon the statements of a confidential informant whose reliability was neither confirmed nor averred. In *Illinois v. Gates,* the United States Supreme Court reaffirmed that probable cause to support a search warrant would be determined by the totality of the circumstances and not by an "excessively technical dissection of informant's tips." *Gates,* 462 U.S. 213, 233-38, 103 S.Ct. 2317, 76 L.Ed.3d 527 (1983). The Court stressed that "after-the-fact scrutiny by courts of the sufficiency of an affidavit [supporting probable cause] should not take the form of a *de novo* review." *Id.* at 236. Instead, the decision of the issuing magistrate was entitled to "great deference," *Id.,* and the reviewing court should determine only whether "there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton,* 466 U.S. 727, 728, 104 S.Ct. 2085, 80

L.Ed.2d 721 (1984). Although the affidavit supporting the application for the 2009 search warrant arguably contained substantial information giving rise to a reasonable finding of probable cause, the undersigned need not determine whether probable cause supported the warrant because the good faith exception to the Fourth Amendment's exclusionary rule would have applied to the 2009 search and would have defeated Huddleston's suppression motion.

In *United States v. Leon,* the Supreme Court supplemented its decisions regarding probable cause by finding that evidence should not be suppressed under the exclusionary rule, even when obtained through a subsequently invalidated search warrant, if law enforcement officers acted in reasonable reliance upon the validity of the warrant at the time they executed it. *Leon*, 468 U.S. 897, 913, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The Court explained that this "good faith" exception to the exclusionary rule was logical when considering that the purpose of the exclusionary rule was to deter unlawful police conduct. Given that a search warrant was not issued on "the hurried judgment of a law enforcement officer," but rather on "the detached and neutral scrutiny of a magistrate," a search warrant provided "a more reliable safeguard against improper searches." *Id.* at 913-14. Consequently, the Court reasoned that an "evaluation of the costs and benefits of suppressing reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate leads to the conclusion that such evidence should be admissible in the prosecution's case in chief." *Id.*

Nonetheless, the good faith exception to the exclusionary rule is not without limits. The Supreme Court identified instances in which the good faith exception would not apply; such as: (1) when the magistrate issuing the warrant was mislead by

information in the affidavit that the affiant knew or should have known was false if not for the affiant's reckless disregard for the truth; (2) when the magistrate acted as nothing more than a rubber stamp for the police; (3) when the affidavit was so lacking of indicia of probable cause that no reasonable magistrate could have believed probable cause to exist; or (4) when the warrant was so facially deficient the executing officer could not reasonably presume its validity. *Leon*, 468 U.S. at 923; *see also United States v. Hypolite,* 65 F.3d 1151, 1156 (4th Cir. 1995).

Here, there is nothing to indicate that any of these circumstances existed. Huddleston does not allege that the information in the affidavit was false, or that the magistrate abandoned her official duties when scrutinizing the affidavit and complaint for a search warrant. The affidavit supplied in support of the search warrant was not devoid of indicia of probable cause. To the contrary, it contained detailed information provided by the confidential informant regarding ongoing drug trafficking activities at Huddleston's residence. (ECF No. 39-1 at 2-3). The informant's statements were bolstered by his personal observations of methamphetamine-making paraphernalia, drugs, and at least one gun at Huddleston's residence. Moreover, the informant implicated himself in Huddleston's illegal activities, which has generally been found to lend credibility to the informant's statements. *See United States v. Hurdle,* 2008 WL 3834081 *3 (W.D.Va. Aug. 14, 2008) (collecting cases). Finally, Huddleston raises no challenge to the facial sufficiency of the warrant. Therefore, the undersigned **FINDS** that Huddleston has not established either unreasonable conduct or prejudice under *Strickland*, and thus his ineffective assistance claim on this ground fails.

Huddleston's second objection to the 2009 search warrant is also without merit. Huddleston argues that the 2009 search warrant was deficient to the extent that it

alleged there was marijuana in Huddleston's home. (ECF No. 94 at 33). Huddleston

cites W. Va. Code § 61-7-7(b)(2) for the proposition that West Virginia state law excepts

marijuana as a basis for obtaining a search warrant. (*Id.* at 38). Huddleston misreads

the law, which states in relevant part:

> [A]ny person. . . who has been convicted in this state or any other
> jurisdiction of a felony controlled substance offense involving a Schedule
> I controlled substance other than marijuana, a Schedule II or a Schedule III
> controlled substance . . . shall be guilty of a felony and, upon conviction
> thereof, shall be confined in a state correctional facility for not more than
> five years or fined not more than five thousand dollars, or both.

W. Va. Code § 61-7-7(b)(2). The statute makes it unlawful under West Virginia law for

certain convicted felons to possess firearms, specifically those who have been convicted

of controlled substance offenses for any substance other than marijuana. It does not

except marijuana possession as a ground for obtaining a valid search warrant.

Accordingly, the undersigned further **FINDS** that counsel did not render ineffective

assistance by failing to pursue this non-meritorious issue on Huddleston's behalf.

### 3. *Failure to Object to the 2010 Search*

Huddleston identifies a number of purported deficiencies regarding trial

counsel's handling of the January 2010 search. Specifically, he argues that counsel:

failed to investigate the facts and interview witnesses who were present during the

January 2010 search; failed to investigate whether Huddleston should have been subject

to a sex offender sweep; failed to object to the admissibility of firearms recovered during

the January 2010 search; failed to object to the admissibility of the Mirandized

confession he provided law enforcement in connection with the January 2010 search;

and failed to pursue prior counsel's Motion to Suppress evidence found during the

January 2010 search. (ECF No. 102 at 2-3). Huddleston contends that law enforcement

must have exceeded the scope of their investigatory authority because the location of the initial firearm discovered in the outbuilding was not in plain sight. (*Id.* at 3-4). Huddleston also asserts that law enforcement never sought consent to search the premises, and therefore the additional firearms discovered in his house were also inadmissible. (*Id.* at 3). He further alleges that the confession he gave to law enforcement was signed under threat, duress, and coercion. (ECF No. 94 at 6-8). Huddleston argues that "any zealous attorney would have focused on these issues," and that had trial counsel properly investigated his case, he "would have understood the charges and opted for trial." (ECF No. 102 at 5).

Defense counsel's duty to investigate requires counsel to make reasonable investigations or "to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 690–91. A court's review of counsel's decision not to investigate is highly deferential in light of the circumstances at the time of counsel's representation. *Id.* at 691. Even where counsel could have made a more thorough investigation, in considering claims of ineffective assistance of counsel, the proper inquiry is "not what is prudent or appropriate, but only what is constitutionally compelled." *Burger v. Kemp,* 483 U.S. 776, 794, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987) (quoting *United States v. Cronic,* 466 U.S. 648, 665 n.38 (1984)). Further, in order to be successful, a petitioner must explain what useful evidence would have been obtained from the additional interviews or meetings. *See Bassette v. Thompson,* 915 F.2d 932, 940–41 (4th Cir. 1990).

While Huddleston complains about the search that led to Count 3 of the indictment, he pled guilty only to Count 1; that being, the unlawful possession of firearms on January 16, 2009. (ECF No. 56 at 1). The January 2010 charge was

dismissed, consistent with the terms of the plea agreement. (ECF No. 81 at 30). Certainly, dismissal is the best outcome Huddleston could have obtained on that particular count. Moreover, Huddleston's criticism that counsel should have objected to the evidence from the January 2010 search is curious in light of the motion to suppress that evidence, which had not yet been addressed by the court. The suppression motion was not pursued when Huddleston decided to plead guilty to Count 1 in exchange for outright dismissals of Counts 2 and 3 of the indictment. Huddleston wholly fails to explain how counsel's abandonment of the motion to suppress the 2010 evidence caused him to plead guilty to possession of firearms in 2009. In addition, he fails to identify any new and useful information that counsel could have discovered in a more in-depth investigation of the 2010 search. All of the "undiscovered" evidence described by Huddleston in his reply memorandum was contained in the pending suppression motion; was known to Huddleston at the time and, therefore, available to counsel without further investigation; or was part of the court record available for cross-examination at trial. (*See* ECF No. 102). Counsel never fleshed out the facts nor cross-examined the witnesses because Huddleston pled guilty and, as discussed in Section B *infra*, Huddleston's guilty plea was knowing and voluntary. The quality of counsel's performance is irrelevant if it had no direct and significant impact on Huddleston's decision to plead guilty. Accordingly, even if Huddleston could prove that his counsel's representation fell below an objective standard of reasonableness, he cannot demonstrate that "but for" his counsel's investigation and handling of the 2010 evidence, he would not have pled guilty to the 2009 charge.

To the extent that the results of the January 2010 search may have influenced the District Court's decision not to grant a downward departure in sentencing, "the court

may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). Moreover, "reliable but illegally-obtained evidence may generally be considered by the sentencing judge," *United States v. Lee*, 540 F.2d 1205, 1207 (4th Cir. 1976). Huddleston now argues that his initial Miranda waiver and confession was made under threat, duress, and coercion, (ECF No. 94 at 7). Huddleston bases his argument on the fact that "armed officers were in a private residence" and that he "has had two heart attacks in his past, and cooperation was a means to lower his heart rate." (*Id.*). "Statements obtained in violation of *Miranda*, if they are otherwise voluntary, may generally be considered at sentencing." *United States v. Nichols*, 438 F.3d 437, 442 (4th Cir. 2006). Even if Huddleston's confession were inadmissible, Huddleston does not deny the fact that law enforcement seized firearms and drugs from his residence during the 2010 search. Assuming *arguendo* that the 2010 search violated Huddleston's Fourth Amendment rights, the record reflects that law enforcement nevertheless found Huddleston in possession of multiple firearms and drugs during that search, information which the Court was permitted to consider in sentencing. (ECF No. 80 at 18). Counsel's "failure" to investigate and pursue alleged Fourth Amendment violations did not affect the outcome of Huddleston's case. Accordingly, the undersigned **FINDS** that Huddleston cannot satisfy the prejudice prong of the *Strickland*.

### B.    Knowing and Voluntary Guilty Plea

Huddleston next argues that his guilty plea was not voluntary. (ECF No. 94 at 4). He contends that he was not fully counseled regarding the circumstances of his case because his defense attorney failed to apprise him of potential affirmative defenses. (*Id.*

at 5). Huddleston argues that counsel should have informed him of the following affirmative defenses: (1) Fourth Amendment violations relating to the 2010 search; (2) "innocent possession" as explained in *United States v. Mooney*; (3) relief from the 2009 search warrant under WV Code § 61-7-7(b)(2); and (4) contributory negligence. (*Id.* at 13, 38-40). Huddleston also argues that he was denied full disclosure of the facts of his case because he was not permitted to see who testified before the grand jury. (*Id.* at 13).

### 1.  *Affirmative Defense Regarding the January 2010 Search*

Although Huddleston argues that counsel failed to investigate the potential defenses to the charge relating to possession of firearms in January 2010, this charge was ultimately dismissed pursuant to a plea agreement. (ECF No. 81 at 30). As previously stated, Huddleston makes no claim as to how counsel's failure to investigate the January 2010 search could have prevented him from knowingly and voluntarily pleading guilty to the January 2009 charge. Moreover, the District Court fully complied with Federal Rule of Criminal Procedure 11 in accepting Huddleston's plea.

Federal Rule of Criminal Procedure 11 governs the validity of guilty pleas. The purpose of the Rule 11 colloquy is to ensure that the plea of guilty is entered into knowingly and voluntarily. *See United States v. Vonn,* 535 U.S. 55, 58, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002); *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). When accepting a guilty plea, the Court must address the defendant personally in open court and inform him of the rights that he is waiving by changing his plea to guilty. Fed. R. Crim. P. 11(b). The court also must determine whether there is a factual basis for the plea and ensure that the plea did not result from force, threats, or non-plea agreement promises. *Id.; see also United States v. DeFusco,* 949 F.2d 114, 119–20 (4th Cir. 1991). If the defendant fails to understand his constitutional

28

protections and the charges made against him, the guilty plea is invalid and should not be accepted. *Henderson v. Morgan,* 426 U.S. 637, 645, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). "The purpose of Rule 11 is not only to detect and reject involuntary and unknowing guilty pleas but also to produce a suitable record of the plea and plea agreement." *United States v. Friedland*, 879 F.Supp. 420, 427 (D.N.J. 1995). Because the Rule 11 hearing provides the best evidence of a criminal defendant's understanding and acceptance of the plea and its consequences, when assessing the voluntary and intelligent nature of a guilty plea on a § 2255 motion, the reviewing Court necessarily allocates substantial weight to the Rule 11 colloquy.  Statements made during a hearing to accept a guilty plea are presumed to be true and subsequent attacks that contradict these statements may generally be dismissed as frivolous. *United States v. Lemaster,* 403 F.3d 216, 222 (4th Cir. 2005). The Fourth Circuit Court of Appeals explained that:

> a defendant's solemn declarations in open court ... 'carry a strong presumption of verity ... because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy ... Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.

*Id.* at 221–22.

The District Court examined and confirmed Huddleston's competency to enter a guilty plea, which both Huddleston and his counsel affirmed. (ECF No. 80 at 3-4). The Court questioned Huddleston about his legal representation, and Huddleston agreed that he had been given ample opportunity to discuss the case with his lawyer and was completely satisfied with his counsel's representation. (*Id.* at 4-5). Counsel for Huddleston explained the contents of the plea agreement on the record, while

Huddleston averred that he understood the terms of the plea agreement and had reviewed each paragraph of the document with his counsel prior to signing it. (*Id.* at 9).

The District Court described the substance of the firearms possession charge outlined in Count One of the indictment, explaining the legal terms to Huddleston, and assessed the factual basis for Huddleston's guilty plea. (*Id.* at 11-13). Huddleston testified that he was guilty of knowingly possessing firearms after having been convicted of a crime punishable by imprisonment for a longer than one year. (*Id.*) He admitted to having been convicted of three separate qualifying offenses and subsequently owning or possessing firearms in his residence in Apple Grove, WV. (*Id.*). United States Deputy Marshal Seckman's testimony corroborated Huddleston's account of his unlawful possession of firearms at his residence. (ECF No. 80 at 13-18).

The Court also explained the consequences of Huddleston's guilty plea. (*Id.* at 19-25). The Court discussed Huddleston's potential loss of civil rights, sentencing exposure, terms of supervised release, and potential monetary penalties. (*Id.* at 19-21). The Court explained the sentencing guidelines, their applicability to Huddleston's case, the unavailability of parole, and the binding nature of his guilty plea. (*Id.* at 21-23). The Court reviewed the terms of Huddleston's plea agreement concerning Huddleston's waiver of appellate and collateral attack rights and discussed at length additional constitutional protections Huddleston would forego by pleading guilty. (*Id.* at 25-27). Finally, the Court questioned Huddleston regarding the voluntary nature of his guilty plea, during which Huddleston testified that his guilty plea was voluntary and that he did not have any second thoughts about pleading guilty. (*Id.* at 27-28). Thus, the record demonstrates that Huddleston's guilty plea was voluntary and intelligent.

The District Court conducted a careful Rule 11 colloquy that established Huddleston's full understanding of the charges against him, the burden of proof on the United States, and the consequences of his guilty plea, as well as the knowing and voluntary nature of Huddleston's guilty plea.[7] "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Lemaster,* 403 F.3d at 221–22. The undersigned **FINDS** that Huddleston's sworn statements at the guilty plea hearing are binding. Huddleston now offers self-serving, conclusory assertions that contradict his testimony at the Rule 11 colloquy and his written guilty plea. Huddleston will not be heard to complain about the knowing and voluntary nature of his guilty plea, which he made pursuant to a plea agreement that dismissed the very charge about which he now complains.

### 2.   *Affirmative Defense of "Innocent Possession"*

Huddleston argues that counsel's failure to inform him of the "innocent possession" defense deprived him of making a knowing and voluntary guilty plea. (ECF No. 94 at 40). This argument is foreclosed by the fact that the Fourth Circuit has repeatedly rejected "innocent possession" as a defense to 18 U.S.C. § 922(g)(1). *Gilbert*, 430 F.3d at 220; *United States v. Harris*, 332 Fed.Appx 55, 56 (4th Cir. 2009).

Huddleston relies on *United States v. Mooney*, 497 F.3d 397 (4th Cir. 2007) to support his argument; however, this reliance is misplaced because *Mooney* involves a justification defense, not an "innocent possession" defense, and under no interpretation

---

[7] Additionally, Huddleston initialed and signed a written plea of guilty and the plea agreement, attesting that his guilty plea was both knowing and voluntary. (ECF Nos. 55, 56).

of the record can Huddleston maintain a justification defense. In *Mooney*, the Fourth Circuit applied a "four-prong test for evaluating the merits of a justification defense to a felon-in-possession charge under § 922(g)." 497 F.3d at 406. In order to demonstrate justification, a defendant must show that he:

> (1) was under unlawful and present threat of death or serious bodily injury;
>
> (2) did not recklessly place himself in a situation where he would be forced to engage in criminal conduct;
>
> (3) had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and
>
> (4) [that there was] a direct causal relationship between the criminal action and the avoidance of the threatened harm. ion and the avoidance of the threatened harm.

*United States v. Crittendon*, 883 F.2d 326, 330 (4th Cir. 1989). Nothing in the record even remotely suggests that Huddleston was under threat of death or serious bodily injury requiring him to possess a firearm—let alone 27 firearms—nor does he make such a claim in his § 2255 motion. Consequently, the undersigned **FINDS** that Huddleston's guilty plea was not rendered unknowing or involuntary by his counsel's failure to inform him of a defense which would have been unsuccessful.

### 3. Remaining "Affirmative Defenses"

Huddleston's remaining "affirmative defenses" are similarly without merit and can be briefly disposed of as follows. First, the undersigned has already addressed the effect of W. Va. Code § 91-7-7(b)(2) on the validity of the 2009 search warrant. Namely, there was no invalidating effect. *See supra* Part V.A.2. Accordingly, such a non-meritorious defense did not affect the knowing and voluntary nature of Huddleston's guilty plea.

Second, contributory negligence is a defense that sounds in tort, not criminal law. Contrary to Huddleston's assertion, contributory negligence is not a defense to possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) or a basis for granting him § 2255 relief. *See United States v. Modena*, 2011 WL 4529456, at *6 (W.D.Mich. Sept. 30, 2011) (unpublished).

Third, Huddleston's argument that he did not receive full disclosure because he was "not allowed to see who went before the Grand Jury who gave the serial number up" is unavailing. (ECF No. 94 at 13). "In light of the import of the grand jury's core functions, secrecy is a hallmark of its proceedings." *Gilbert v. United States*, No. 99-1602, 2000 WL 20581, at *2 (4th Cir. Jan. 13, 2000) (unpublished). Although Fed. R. Crim. P. 6(e) provides exceptions to this general rule of secrecy, "the burden is on the applicant for disclosure of confidential grand jury materials to establish 'a strong showing of particularized need before any disclosure will be permitted.'" *Id.* (quoting *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443, 103 S.Ct. 3133, 77 L.Ed.2d 742 (1983). Such a showing requires applicants to establish "that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Id. (quoting Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979)); *also In re Grand Jury Proceedings*, 800 F.2d 1293, 1299 (4th Cir. 1986). Huddleston makes no effort to establish a "strong showing of particularized need" for access to the confidential grand jury material. Accordingly, this argument fails as well.

Given the Rule 11 colloquy and the generally unviable nature of the affirmative defenses that Huddleston attempts to raise, the undersigned **FINDS** that Huddleston's

alleged additional affirmative defenses provided no basis upon which to succeed at trial; therefore, counsel was not ineffective for failing to raise them. Moreover, the record is abundantly clear that Huddleston fully understood the consequences of entering a guilty plea and made the decision after careful consideration of his options.

### C.  Ineffective Assistance Related to Sentencing

Lastly, Huddleston argues that counsel provided ineffective assistance during sentencing by failing object to the enhancement for possessing a gun with an obliterated serial number. (ECF No. 94 at 15). Huddleston also identifies several errors allegedly committed by the District Court, to which counsel should have objected, including: (1) consideration of a 1976 conviction to determine Huddleston's sentence; (2) reference to "some" obliterated serial numbers; and 3) consideration of the number of firearms, various drugs, and the obliterated serial number in determining Huddleston's sentence. (*Id.* at 17-18, 34).

### 1.  *Obliterated Serial Number Enhancement*

As part of the plea agreement, Huddleston agreed to a four-level offense enhancement for possession of a firearm with an obliterated serial number. (*Id.* at 7). Huddleston now argues that the serial number on the Taurus pistol was not actually obliterated. (*Id.* at 13). Specifically, Huddleston points to the forfeiture section of the indictment, which lists one "Taurus, model 38 Special, .38 pistol" with a serial number 1190986. (ECF No. 94 at 11, 35). Huddleston asks, "How can it be obliterated if there is a serial number listed right there?" (*Id.* at 13.). Huddleston also appears to believe that law enforcement planted the pistol with an obliterated serial number on his premises as part of a targeted set-up. (*Id.* at 39). Thus, Huddleston argues that trial counsel provided ineffective assistance by failing to object to the sentencing enhancement

related to an obliterated serial number on one of the firearms. (*Id.* at 39).

Contrary to Huddleston's contentions, all of the objective evidence points to the existence of **two** Taurus, Model 38 special, .38 pistols, one with a serial number and one with an obliterated serial number. First, in Count 2 of the indictment, the federal grand jury charged Huddleston with possession of a "Taurus, Model 38 special, .38 pistol" with an obliterated serial number. (ECF No. 18 at 4). Count 1 of the indictment listed several firearms, including a "Taurus, Model 38 special, .38 pistol," which was further identified by serial number in the forfeiture section of the indictment. (ECF No. 18 at 1, 7). Second, although Huddleston made two motions to suppress evidence based upon Fourth Amendment challenges, he never contested the existence of a firearm with an obliterated serial number until now. (ECF Nos. 39 & 40). Third, Huddleston signed and initialed the written plea agreement, which expressly stated that Huddleston agreed to forfeit 27 firearms seized from him on January 16, 2009, including **two** Taurus, Model 38 special, .38 pistols, one with a serial number and one with an obliterated serial number. (ECF No. 56 at 3-4). Fourth, during the plea colloquy, the District Court explicitly questioned Huddleston regarding the obliterated serial number:

> The Court: Do you understand that you've agreed that there's certain offense levels that will apply here, first a base offense level based on being a felon in possession, another offense level based on a prior substance abuse -- or a prior controlled substance offense conviction, and that as a result of all these adjustments, in particular also the number of firearms and the fact that some had an obliterated serial number, would result in an adjusted offense level of 29?
>
> Huddleston: Yes.
>
> The Court: You understand you've agreed to those guideline provisions applying?
>
> Huddleston: Yes, sir.

(ECF No. 80 at 23). Fifth, paragraph 11 of the PSR includes a statement that following the January 2009 search, "[t]he seized weapons were examined by ATF and one of them, a Taurus, model 38 Special, .38 pistol was determined to have an obliterated serial number, which encompasses count two of the indictment." (ECF No. 69 at 4). Over Huddleston's objection to its inclusion, the probation officer preparing the PSR opted to include paragraph 11 in its entirety, based upon the fact that "[t]he information was received through police reports and is part of the relevant conduct in this case." (*Id.* at 16). Thus, there is no indication that counsel's conduct regarding the obliterated serial number fell below an objective standard of reasonableness.[8]

### 2.      Failure to Object to the District Court's Alleged Errors

Huddleston argues that counsel provided ineffective assistance by failing to object to three perceived errors that the District Court made during sentencing.[9]

First, Huddleston argues that the District Court erred in using his 1976 conviction to determine his sentence in the instant offense. (ECF No. 94 at 17, 34). Although the PSR does list a 1976 conviction in the criminal history section, zero criminal history points were attributed to the conviction, as prescribed by § 4A1.2(e)(3) ("Any prior sentence not within the time periods specified above is not counted"). Thus, the 1976 conviction did not affect Huddleston's sentencing guideline range. The

---

[8] Huddleston also argues that counsel provided ineffective assistance by advising him to "take a plea" and agree to the dismissal of the obliterated serial number charge. (ECF No. 94 at 35). Huddleston asserts that had he gone to trial, he would have disproved the existence of an obliterated serial number, (*Id.* at 35-56), and exposed "police corruption" and Huddleston's "set-up" by law enforcement. (*Id.* at 39). Given that a pistol with an obliterated serial number was found on his property and Huddleston has not even a scintilla of evidence that it was planted, Huddleston's assertions are frivolous.

[9] Although Huddleston frames his argument in terms of ineffective assistance of counsel, it appears to the undersigned that Huddleston actually takes issue with the Court's application of the sentencing guidelines rather than counsel's performance at sentencing. Huddleston's waiver of collateral attack was designed to prevent exactly this type of challenge to Huddleston's sentence in habeas proceedings. *United States v. Djelevic*, 161 F.3d 104, 107 (2nd Cir. 1998).

transcript of the sentencing hearing also establishes that the District Court did not consider the 1976 conviction in declining to grant a downward variance. Accordingly, it does not appear that the 1976 conviction in any way affected Huddleston's sentence.

Second, Huddleston argues that the District Court's statement during the plea agreement that "some had an obliterated serial number" prejudiced him during sentencing because "[t]he oral pronouncement *[sic]* of the bench, that 'some' were obliterated speaks in the plural vernacular." (ECF No. 94 at 18). This argument is entirely frivolous. The record clearly reflects that the District Court understood there to be one obliterated serial number, for which Huddleston received a four-level enhancement. (ECF No. 81 at 16).

Third, Huddleston claims that he had "substantive rights" under *Begay v. United States*, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008) to "not having the guns joined to the drugs" and "to not be charged with an obliterated serial number gun." (ECF No. 94 at 18). To the extent that Huddleston interprets *Begay* to preclude the District Court from considering the number of firearms he possessed, the obliterated serial number, or the drugs seized during the two searches, he is mistaken. *Begay* is entirely inapposite to Huddleston's case, as it addresses when an offense is considered to be a "violent felony" within the meaning of the Armed Career Criminal Act. *Begay*, 553 U.S. at 141. Huddleston was not sentenced under the Armed Career Criminal Act, nor is it relevant whether this conviction or any of his prior convictions constitute violent felonies. The sentencing guidelines clearly provide for firearm enhancements based upon the number of firearms attributed to the defendant and possession of a firearm with an obliterated serial number. U.S.S.G. §§ 2K2.1(b)(1) and 2K2.1(b)(4). Furthermore, in deciding whether to grant or deny a discretionary downward departure,

primary factors to be considered by the District Court are "the nature and circumstances of the offense and the history and characteristics of the defendant." *United States v. Jones*, 469 Fed.Appx. 175, 184 (4th Cir. 2012). During both the 2009 and 2010 searches, law enforcement discovered quantities of multiple controlled substances in addition to the firearms. (ECF No. 81 at 13-14). This is clearly relevant to the entire circumstances of the offense for which Huddleston was sentenced. Huddleston has no "substantive right" to avoid the District Court's determination of his sentence based upon the relevant sentencing guidelines.

For the foregoing reasons, the undersigned **FINDS** that Huddleston has failed to demonstrate ineffective assistance of counsel during sentencing.

### D.    Prosecutorial Misconduct and Related Claims

Throughout his pleadings, Huddleston raises a number of claims unrelated to ineffective assistance of counsel. Huddleston argues that the Government committed prosecutorial misconduct by (1) "coerc[ing] [him] to waive the drugs found, but implicate himself joining the guns to the drugs, absent the right to the presence of a lawyer" during the 2010 search; (2) forcing him to sign a plea agreement based upon a deficient indictment; and (3) "sentencing the defendant to something he did not believe to be criminal." (ECF No. 94 at 7, 12-13). Huddleston also argues that the Grand Jury committed prosecutorial misconduct by wrongfully indicting him for possessing a firearm with an obliterated serial number. (*Id.* at 13). Finally, Huddleston "asserts Fraud, Illegality, Statute of Frauds, and Statute of Limitations" as affirmative defenses." (*Id.* at 31).

### 1.    Waiver of Collateral Attack

Huddleston's claims are foreclosed from review because he knowingly and voluntarily waived his right to raise a collateral challenge to his conviction and sentence, except on the grounds of ineffective assistance of counsel. A criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary. *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005).[10] Statements made during a hearing to accept a guilty plea are afforded a strong presumption of veracity and subsequent attacks that contradict these statements may generally be dismissed as frivolous. *Id.* at 221. To the extent that Huddleston's petitions can be construed as alleging that the waiver of his collateral-attack rights was not knowingly and voluntarily entered, this argument is squarely contradicted by his own sworn statements at his Rule 11 hearing. *See Fields*, 956 F.2d at 1299 ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy.").

As the record reflects, the District Court conducted a thorough Rule 11 colloquy. (ECF No. 80). Huddleston's attorney explained the contents of the plea agreement on the record. (*Id.* at 6–9). The District Court questioned Huddleston about his understanding of the plea agreement and Huddleston affirmed that he understood the terms of the agreement as explained by his attorney. (*Id.* at 10-12). The Court explicitly reviewed the terms of the waiver of appeal and collateral attack rights contained in the plea agreement. (*Id.* at 24-25). Huddleston in turn acknowledged that he understood the

---

[10] The Fourth Circuit has recognized a narrow class of claims that fall outside of the scope of a general waiver of collateral-attack rights, namely claims regarding complete deprivation of counsel and the imposition of a sentence in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race. *Lemaster,* 403 F.3d at 220 n.2 (4th Cir. 2005). Huddleston's claims at issue here do not fall into this class of exceptions.

effect of the waiver provisions. (*Id.*). As discussed above, the Court verified that Huddleston's guilty plea was made knowingly and voluntarily. (*Id.* at 27-28).

The written plea agreement further supports the conclusion that Huddleston's waiver of collateral attack was knowing and voluntary. (ECF No. 56). Huddleston's plea agreement contained a detailed waiver of appeal and collateral attack, including the following provision, "Mr. Huddleston . . . knowingly and voluntarily waives the right to challenge his guilty plea and his conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255." (*Id.* at 7). Huddleston initialed each page of the plea agreement and signed the last page of the agreement, affirming that he had read and carefully discussed every part of the agreement with his attorney. (*Id.* at 9). Huddleston further confirmed that he voluntarily agreed to the terms and conditions set forth in the agreement.

In light of the foregoing evidence, the undersigned **FINDS** that Huddleston's waiver of collateral attack was knowing and voluntary. Huddleston repeatedly affirmed his understanding of the plea agreement and voluntary waiver of his right to collaterally attack the conviction or sentence except as permitted by the agreement. Consequently, the undersigned **FINDS** that Huddleston's remaining claims are foreclosed from review.

### 2.    *Prosecutorial Misconduct and Other Defenses*

Even if Huddleston had not waived his right to collateral attack, he cannot demonstrate prosecutorial misconduct. Such a claim requires the defendant to show "(1) that the prosecutor's remarks and conduct were, in fact, improper and (2) that such remarks or conduct prejudiced the defendant to such an extent as to deprive the

defendant of a fair trial." *United States v. Allen*, 491 F.3d 178, 191 (4th Cir. 2007).

Most of Huddleston's allegations of prosecutorial misconduct are reiterations of claims he has already made. First, Huddleston characterizes law enforcement's conduct during the 2010 search as "prosecutorial misconduct,"[11] but the substance of his argument amounts to a claim that law enforcement violated his *Miranda* rights. (ECF No. 94 at 7). As discussed above, even if Huddleston's confession were involuntary, it did not affect the outcome of his case because the charge relating to the 2010 search was ultimately dismissed. Second, Huddleston alleges that the Government forced him to sign a plea agreement based upon a "conflicting" indictment, (*id.* at 13), but as discussed above, the record reflects that the indictment was not conflicting and that Huddleston's plea was knowing and voluntary. Third, the District Court is responsible for sentencing Huddleston, not the Government. To the extent that the Government supported "sentencing the defendant to something he did not believe to be criminal," (*id.* at 13), this does not amount to prosecutorial misconduct, as Huddleston's conduct was clearly unlawful regardless of whether he believed his possession of a firearm to be lawful. Fourth, the Grand Jury plays a historically distinct and separate role from the prosecutor. *See Sells Eng'g, Inc.*, 463 U.S. at 423. Huddleston characterizes the Grand Jury's indictment on the obliterated serial number charge as "prosecutorial misconduct," but he really disputes whether the Grand Jury could have found all elements of the crime to be present, namely the existence of an obliterated serial number. *United States v. Hooker*, 841 F.2d 1225, 1230 (4th Cir. 1988). This argument

---

[11] Huddleston also alleges that this conduct amounted to entrapment. (ECF No. 94 at 7). "Entrapment is an affirmative defense that requires that the defendant first establish that the government induced him to commit the charged offense." *United States v. Heijnen*, 149 Fed.Appx. 165, 168 (4th Cir. 2005). Although Huddleston seems to argue that the Government coerced him into admitting to possessing the firearms, he makes no claim that the Government induced him to possess the firearms.

has already been disposed of above.

Furthermore, there is no merit to Huddleston's unsupported assertion of "Fraud, Illegality, Statute of Frauds, and Statute of Limitations" as affirmative defenses. (ECF No. 94 at 31). First, Huddleston alleges no facts upon which to base his accusations of fraud or illegality, nor does he specify whom he believes engaged in fraud or illegal conduct. (*Id.*). Second, to the extent that Huddleston raises the Statute of Frauds as a defense to the validity of his plea agreement, his argument fails. "The Statute of Frauds, which has been with us since the 17th century, reflects concerns about the reliability of oral evidence. It assumes a valid, enforceable agreement between the parties but nevertheless leaves them without a remedy absent reliable evidence-a writing." *General Dynamics Corp. v. United States*, _ U.S. _, 131 S.Ct. 1900, 1908, 179 L.Ed.2d 957 (2011). Here, the plea agreement was reduced to writing, which Huddleston signed, and initialed on each page. (ECF No. 56). The plea agreement was a valid, enforceable contract. See *United States v. Peglera*, 33 F.3d 412, 413 (4th Cir. 1994) ("It is well-established that the interpretation of plea agreements is rooted in contract law"). Third, a statute of limitations period of five years applies to violations of 18 U.S.C. § 922(g)(1). *United States v. Greever*, 134 F.3d 777, 780 (6th Cir. 1998). The Government clearly satisfied the five year limitations period, as Huddleston committed the crime of conviction on January 16, 2009 and was indicted on March 3, 2010. (ECF No. 18).

Consequently, the undersigned **FINDS** that Huddleston's remaining claims are unavailing.

## VI.   <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS**

the following:

1.      Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 94) be **DENIED**;

2.      Movant's Motion to Proceed Without Prepayment of Fees and Affidavit (ECF No. 93) be **DENIED**;

3.      Respondent's Motion to Dismiss (ECF No. 101) be **GRANTED**; and

4.      This civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

Movant is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Movant shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and

43

Recommendations" to the Movant, Respondent, and any counsel of record.

**FILED**: August 29, 2012.

Cheryl A. Eifert
United States Magistrate Judge